IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LEGAL AID OF NEBRASKA, INC., <br><br>  Plaintiff, <br><br> and <br><br> IOWA MUTUAL INSURANCE COMPANY, as subrogee for WASSCO LLC, WASSENGBERG HOLDING CO., LLC and KENSINGTON TOWER, LLC., <br><br>  Intervening Plaintiff, <br><br> vs. <br><br> CHAINA WHOLESALE, INC., d/b/a DELUXE IMPORT and AMAZON.COM, INC., <br><br>  Defendants. | 4:19-CV-3103 <br><br><br> MEMORANDUM AND ORDER |

Currently before the Court is defendant Amazon's motion for leave to file an amended answer (filing 78) to the plaintiff's amended complaint. For the reasons that follow, the Court will deny Amazon's motion.

I. STANDARD OF REVIEW

When a party is not allowed to amend a pleading as a matter of course, Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Even though leave to amend should be freely given, leave to amend is appropriately denied "if there are compelling

reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Hartis v. Chicago Title Ins. Co.,* 694 F.3d 935, 948 (8th Cir. 2012). Denial of a motion for leave to amend on the basis of futility means that the district court has reached the legal conclusion that the amended pleading could not withstand a motion to dismiss. *City of Plantation Police Officers Pension Fund v. Meredith Corp.,* 16 F.4th 553, 558 (8th Cir. 2021).

## II. BACKGROUND

The plaintiff filed a motion for leave to file an amended complaint on December 1, 2021. Filing 58. The plaintiff's reason for amending its complaint was to add a defendant, Hartland Cleaning Services and Associates. The plaintiff explained that during discovery, circumstantial evidence was uncovered indicating that a Hartland employee may have been responsible for turning on, but not turning off, the infrared quartz space heater that was deemed to have caused the fire in the plaintiff's leased premises. Filing 59. The plaintiff had purchased the space heater by and through Amazon's website. The plaintiff's motion was unopposed, so leave was granted, and the plaintiff's amended complaint was filed on December 15.[1] Filing 61; filing 62.

On December 21, Iowa Mutual Insurance Company filed a motion for leave to intervene as a party plaintiff. Filing 65. Iowa Mutual asserted that it was the insurer for three entities, Wassco LLC, Wassenberg Holding Company LLC, and Kensington Tower LLC, who owned the building in which the

---

[1] The plaintiff filed notice voluntarily dismissing with prejudice its claim against Hartland Cleaning on March 10, 2022. Filing 80. Pursuant to the plaintiff's notice, the Court dismissed with prejudice Hartland Cleaning and terminated it as a party that same day. Filing 81.

2

plaintiff's leased office space was located. Iowa Mutual claimed that it had paid insurance benefits to its insureds regarding damages sustained in the fire and was now legally subrogated to its insureds' claims for damages. Filing 65 at 1-2. Attached to Iowa Mutual's brief in support of its motion was its proposed complaint in intervention. Filing 66-1.

On December 28, Amazon filed notice that it did not oppose Iowa Mutual's motion to intervene. Filing 68. A text order was entered the next day granting Iowa Mutual leave to intervene. Filing 70. Also on December 28, Amazon filed its answer to the plaintiff's amended complaint, in which it asserted substantially the same affirmative defenses that were asserted in its answer to the plaintiff's initial complaint. Filing 69. Several of Amazon's affirmative defenses were predicated on the plaintiff's alleged fault or conduct. For example, Amazon raised affirmative defenses of contributory negligence, assumption of risk, failure to mitigate damages, product misuse, alteration of the product, and that all alleged losses were caused by the plaintiff's employee or agent. Filing 69 at 5.

Iowa Mutual filed its complaint in intervention on January 3, 2022. Filing 71. In it, Iowa Mutual alleged that as the direct and proximate result of the fire that started in the plaintiff's leased suite, its insureds incurred damages in the amount of $2,681,841.95, and that Iowa Mutual had paid its insureds that amount for all of the damages sustained in the fire. Filing 71 at 4-5. By virtue of its payment in full of its insureds' damages, Iowa Mutual alleged that it was legally subrogated to their claims against all responsible parties, including Amazon. Filing 71 at 5. On January 24, Amazon filed an answer to Iowa Mutual's complaint in intervention. Filing 74. There, Amazon alleged several affirmative defenses, including that its conduct was not the legal or proximate cause of the fire, the alleged losses were caused by persons

3

over whom Amazon had no control or responsibility, and it was entitled to a set-off or reduction of damages for the share of fault attributable to the plaintiff. Filing 74 at 5-6.

Finally, on March 8, Amazon filed a motion for leave to amend its answer and defenses to the plaintiff's amended complaint, and to include what Amazon contends is a counterclaim against the plaintiff. Filing 78. According to Amazon, leave to file its first amended answer to the plaintiff's amended complaint was made necessary, and in response to, the recent claims asserted by Iowa Mutual. Filing 78. Attached to Amazon's motion was its proposed amended answer, defenses, and counterclaims. Filing 78-2. For its counterclaims, Amazon alleged claims against the plaintiff for contribution, offset, and apportionment should a finder of fact conclude that Amazon was negligent and a proximate cause of the fire and Iowa Mutual's damages. Filing 79 at 10-12. Amazon reports conferring with the plaintiff and Iowa Mutual, both of whom did not consent to its request for leave to amend. Filing 78 at 2.

### III. DISCUSSION

The plaintiffs[2] argue that Amazon's motion for leave should be denied because its proposed counterclaim is both futile and untimely. Filing 82. Regarding the untimeliness of Amazon's motion, the plaintiffs argue that Amazon has sought leave to amend after December 1, 2021, which was the Amended Progression Order (filing 57) deadline for moving to amend pleadings or add parties. Filing 82 at 3. Amazon responds that its counterclaims for

---

[2] Legal Aid and Iowa Mutual responded to Amazon's motion with a single brief signed by their separate counsels. For the sake of convenience, where Legal Aid and Iowa Mutual's interests and arguments coincide, they will be referred to as the plaintiffs in this section of the memorandum.

4

contribution, offset and apportionment did not exist until Iowa Mutual intervened in January 2022. Filing 85 at 2. The Court agrees. Amazon's defense that Legal Aid is responsible, at least in part, for the damages suffered by Iowa Mutual's insureds did not exist until Iowa Mutual joined this lawsuit. Amazon's motion for leave to amend to include its counterclaims is not untimely.

The issue of futility, however, is more difficult to unpack. The plaintiffs argue that pursuant to *Tri-Par Investments, LLC v. Sousa*, 680 N.W.2d 190 (Neb. 2004), Legal Aid is a coinsured under its landlords' fire insurance policy with Iowa Mutual. As such, Iowa Mutual is precluded from bringing a subrogation action against an allegedly negligent tenant—who, according to Amazon, is Legal Aid—to recover the insurance proceeds it paid to the building's owners for the losses they incurred in the fire. Contribution, the plaintiffs argue, requires that both the party seeking contribution (Amazon), and the party against whom contribution is sought (Legal Aid) must have a common liability to the injured third party (Iowa Mutual). Filing 82 at 2. Here, because Iowa Mutual is precluded from bringing a subrogation claim against its coinsured, Legal Aid, no common liability exists, and without a common liability, Amazon's claim for contribution is futile.

Amazon concedes that the holding in *Tri-Par* would bar a landlord's insurer from seeking to recover damages directly from a negligent tenant. Filing 85 at 2-3. However, Amazon does not concede that Legal Aid is a coinsured under the Iowa Mutual policy. Amazon argues that it "remains to be seen" whether Legal Aid is a coinsured. Filing 85 at 3. The doubt that Amazon seems to think exists appears to rely on a portion of the language in the holding from *Tri-Par*—"absent an agreement to the contrary, the law presumes that a tenant is coinsured under a landlord's fire insurance policy."

5

It is unclear to the Court exactly what remains to be seen.[3] Amazon's proposed counterclaim does not allege that "an agreement to the contrary" exists. Neither does the Court understand, and Amazon does not explain, how such agreement between the landlord and Legal Aid would inure to Amazon's benefit. The landlord has not intervened to allege a claim against Amazon. The intervenor is Iowa Mutual, who has alleged that it paid its insureds for all damages sustained in the fire. Filing 71 at 5. Amazon's claim that it remains to be seen whether Legal Aid is a coinsured under Iowa Mutual's fire insurance policy appears to be more of a distraction than a disputed fact.

The real issue here is whether Legal Aid and Amazon would have a common liability to Iowa Mutual regarding its subrogation claim if both were found to be negligent and a proximate cause of the fire. The elements for a contribution claim between joint tortfeasors are: (1) There must be a common liability among the party seeking contribution and the parties from whom contribution is sought; (2) The party seeking contribution must have paid more that its pro rata share of the common liability; (3) The party seeking contribution must have extinguished the liability of the parties from whom contribution is sought; and (4) If such liability was extinguished by settlement, the amount paid in settlement must be reasonable. *Estate of Powell ex rel. Powell v. Montange,* 765 N.W.2d 496, 504 (Neb. 2009).

---

[3] Although Amazon's amended answer purports to be without sufficient information to admit that Legal Aid was a tenant in the building insured by Iowa Mutual (filing 74), in support of its motion for leave to amend, Amazon's counsel attached a copy of the lease between Legal Aid and H.A. Wassenberg Holding Co. (filing 86-1), an entity Iowa Mutual identified as one of the building owners and its insured (filing 71 at 2). Nebraska law provides that landlords and tenants are implied coinsureds for subrogation purposes. *Tri-Par,* 680 N.W.2d at 199.

The plaintiffs argue that here, no common liability exists because Legal Aid cannot be liable to Iowa Mutual for subrogation purposes due to its status as an implied coinsured under Iowa Mutual's fire insurance policy. Amazon responds arguing that Legal Aid's status as an implied coinsured is a technical defense that does not go to the merits of the case, and as such, does not extinguish the common liability Amazon and Legal Aid may share for the fire damages Iowa Mutual seeks to recover. Filing 85 at 3.

For authority, Amazon relies on *Nuessmeier Elec., Inc. v. Weiss Mfg. Co.* 632 N.W.2d 248 (Minn. Ct. App. 2001). There, Nuessmeier Electric owned a commercial building, and leased space in the building to LeSueur Electric Motor Repair. *Id.* at 250. A fire in the building was traced to a bearing heater owned by LeSueur. Nuessmeier and its subrogated fire insurer brought a products liability action against the bearing heater manufacturer, defendant Weiss Manufacturing. Weiss then brought a third-party contribution claim against LeSueur alleging that its heater had been misused and altered. LeSueur denied liability, and also argued that it couldn't be liable to Nuessmeier or its insurer because its status as a coinsured resulted in the absence of a common liability essential for a contribution action. *Id.*

The question for the Minnesota Court of Appeals was: Could a tenant's status as a coinsured under a fire insurance policy extinguish the tenant's common liability with the product's manufacturer to the building's owner and subrogated fire insurer? Citing two Minnesota Supreme Court cases, *Jones v. Fisher,* 309 N.W.2d 726 (Minn. 1981) and *Horton v. Orbeth,* 342 N.W.2d 112 (Minn. 1984), the Court of Appeals reported that technical defenses that do not go to the merits of a case do not extinguish common liability even though they eliminate one defendant's direct obligation to compensate a plaintiff. *Nuessmeier,* 632 N.W.2d at 252.

Continuing, the Court of Appeals concluded that even when a plaintiff cannot enforce a recovery against one defendant, common liability remains if the factor preventing enforcement is extrinsic to the tort itself. Factors deemed to be extrinsic to the tort itself included a failure to provide statutory notice, a covenant not to sue, personal immunity, and the expiration of a statute of limitations. Without explanation or any analysis, the Court of Appeals held the tenant's status as a coinsured was extrinsic to its negligence in misusing or altering the bearing heater, and as such, common liability was present. *Id.* at 252-53.

However, in 2010, the Minnesota Court of Appeals took another look at the factors that extinguish common liability. *In re Individual 35W Bridge Litig.*, 786 N.W.2d 890 (Minn. Ct. App. 2010). That case arose out of the 2007 collapse of an Interstate bridge which resulted in thirteen deaths and over one hundred personal injuries. *Id.* at 892. URS Corporation, the contractor who in 2003 inspected the bridge and recommended repairs, and Progressive Contractors Incorporated (PCI), who in 2007 was contracted to make bridge repairs, were sued for negligence. URS and PCI brought third-party actions for contribution against Jacobs Engineering Group, the successor to the engineering firm that designed the bridge in 1962. Jacobs moved to dismiss arguing that Minnesota's statute of repose precluded its common liability with URS and PCI. *Id.* at 893. The Court of Appeals agreed.

In analyzing the issues concerning common liability, the Court of Appeals found that neither *Jones* nor *Horton* explained the distinction between a technical defense that did not extinguish common liability and a defense that did extinguish common liability. *Id.* at 897. Instead, a Minnesota Supreme Court decision that predated *Jones* did explain the difference. In *White v. Johnson*, the court explained that the reasoning behind the decisions where

8

common liability was extinguished was that in those cases, joint liability arose the moment the tort was committed. 137 N.W.2d 674 (Minn. 1965), *overruled on other grounds*, *Tolbert v. Gerber Indus., Inc.*, 255 N.W.2d 362 (Minn. 1977). In contrast, the claimed defenses that did not extinguish common liability came into being after the conduct which created the liability had already occurred. *Id.* at 679.

The significance of the reasoning in *White*, according to the Court of Appeals, was that:

> [A] personal defense that is based upon a well-established public policy of immunity may defeat a contribution claim even though the defense is not related to the defendant's acts, omissions, or culpability. The significant difference between an immunity defense and the defenses identified in *Jones,* which did not extinguish common liability, is that an immunity defense applies from the moment a tort is committed and prevents the immune defendant from ever becoming liable, while the beneficiaries of the defenses in *Jones* were potentially liable when the tort was committed, but they escaped liability because of a procedural mechanism that later created a defense.

*35W Bridge Litig.*, 786 N.W.2d at 898.

The Court of Appeals held that Minnesota's ten-year statue of repose for improvements to real property was a well-established public policy, and was a defense that defeated a contribution claim. There, Jacobs was immune from liability pursuant to the statute of repose the moment the bridge collapsed, and

9

as such, its defense to the contribution claims was not one that arose later because of a procedural mechanism. *Id.* at 899.

The Court finds this reasoning persuasive. In *Tri-Par,* the Nebraska Supreme Court, after an extensive review of the status of the law, adopted the *Sutton* rule and held: "[A]bsent an express agreement to the contrary in a lease, a tenant and his or her landlord are implied coinsureds under the landlord's fire insurance policy, and the landlord's liability insurer is precluded from bringing a subrogation action against the negligent tenant." 680 N.W.2d at 199 (citing *Sutton v. Jondahl*, 532 P.2d 478 (Okla. Civ. App. 1975)). The court found that the *Sutton* rule was in line with the court's prior cases, represented the majority position, and was the modern trend in the law. *Id.* at 195-198. In short, the *Sutton* rule, according to the court, represented the better public policy. *Id.* at 198.

In this matter, Legal Aid's status as the coinsured of the building's owner is based on the better public policy rationale announced in *Tri-Par*. This status existed at the time the fire occurred, and as such, it is a defense to Amazon's contribution claim that did not arise later because of a procedural mechanism. Legal Aid's status as a coinsured is not something *extrinsic* to its alleged negligence in causing the fire. Fire insurance is obtained for the very reason that an insured's negligence may cause a fire loss to its property, and the insurer accepts that risk for a price. In a commercial property context, pursuant to Nebraska law, the risk an insurer accepts would include not only the negligence of the building's owner, but the negligence of the building's tenants as well.

The Court finds that Legal Aid's status as a coinsured with the building's owner under the Iowa Mutual fire insurance policy extinguishes any common liability it may have with Amazon for the purposes of Iowa Mutual's

10

subrogation claim. Without a common liability, Amazon's contribution claim against Legal Aid could not withstand a motion to dismiss.

Amazon argues that its contribution claim is distinct from its claims for offset and apportionment due to the fact that those claims are based on Legal Aid's contributory negligence, whereas contribution is an equitable remedy. Filing 85 at 4. Amazon's argument in reference to its offset claim is not accurate. Amazon claims that any damages awarded to Iowa Mutual which are attributable to Legal Aid's negligence should offset Legal Aid's recovery from Amazon. Filing 78-2 at 9. This is nothing more than a contribution claim in a not-so-subtle disguise. Amazon wants Legal Aid to contribute to Amazon's obligation to compensate Iowa Mutual for its damages through a reduction in the damages Amazon owes to Legal Aid. That's contribution in a nutshell, but by a different name.

Amazon's apportionment claim is, however, based on Legal Aid's alleged contributory negligence. First, Nebraska's contributory negligence statutory scheme, Neb. Rev. Stat. § 25-21,185.07 *et seq.*, is not, as Amazon suggests, recognized as a pure comparative fault doctrine. It is a doctrine that resulted from legislative compromise, which some may refer to as legislative sausage-making. Moreover, the Court will assume, but only for the purposes of this discussion, that Nebraska's comparative negligence scheme presents a valid defense for Amazon. [4]

The issue is whether Amazon's counterclaim against Legal Aid for allocation—alleging that Legal Aid's negligence is a proximate cause of the damages incurred by the building's owners—could withstand a motion to

---

[4] *See Shipler v. Gen. Motors Corp.,* 710 N.W.2d 807 (Neb. 2006); *Jay v. Moog Auto., Inc.,* 652 N.W.2d 872 (Neb. 2002); *Jensen v. Archbishop Bergan Mercy Hosp.,* 459 N.W.2d 178 (Neb. 1990).

11

dismiss. Allocation of the negligence attributable to Amazon and Legal Aid is an issue that has already been raised in Legal Aid's lawsuit against Amazon due to Amazon's asserted contributory negligence affirmative defense. Pursuant to Neb. Rev. Stat. § 25-21,185.09, "Any contributory negligence chargeable to the claimant shall diminish proportionately the amount awarded as damages for an injury attributable to the claimant's contributory negligence."

It is at least theoretically possible that the proportion of negligence between Amazon and Legal Aid with respect to the damages claimed by Iowa Mutual in its complaint in intervention could be different than the allocation of negligence determined in Legal Aid's suit against Amazon. If that is the case, then it may be necessary for Legal Aid to be a defendant, as well as a plaintiff, in the lawsuit that now includes Iowa Mutual as an intervening plaintiff. Section 25-21,185.10 provides that in actions involving more than one defendant, who are not part of a common enterprise or plan, liability of each defendant for economic damages shall be joint and several, but the liability of each defendant for noneconomic damages shall be several only. "Each defendant shall be liable only for the amount of noneconomic damages allocated to that defendant in direct proportion to that defendant's percentage of negligence." § 25-21,185.10.

Because economic damages are joint and several between two negligent defendants, any claim that Amazon may have for Legal Aid to pay a share of Iowa Mutual's joint and several economic damages would be a claim for contribution. *See Royal Indem. Co. v. Aetna Cas. & Sur. Co.,*229 N.W.2d 183, 190 (Neb. 1975) ("[I]n this jurisdiction there is no absolute bar to contribution among negligent joint tortfeasors; and also, as in this case, that a right to equitable contribution exists among judgment debtors jointly liable in tort for

damages negligently caused.") Here, however, such claim could not withstand a motion to dismiss due to the absence of a common liability.

Allocation, however, may be possible for Iowa Mutual's noneconomic damages, but only if there are two *defendants* in the case. *See Maxwell v. Montey*, 631 N.W.2d 455, 462 (Neb. 2001). Without Amazon's counterclaim, Legal Aid would not be a defendant, as well as a plaintiff, in the case as it now stands. Thus, in the event the damages claimed by Iowa Mutual constitute noneconomic damages as defined in Neb. Rev. Stat. § 25-21,185.08(3), Legal Aid would have to be a defendant in the case, and then Amazon's counterclaim for apportionment would not be futile.

But that circumstance just begs the question, has Amazon alleged any facts indicating that even some of Iowa Mutual's damages may be noneconomic? Noneconomic damages are "subjective, nonmonetary losses, including but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation, and humiliation, but shall not include economic damages." Neb. Rev. Stat. § 25-21,185.03(3). Amazon's proposed counterclaim only alleged that Iowa Mutual paid its insureds, the building owners, for losses allegedly sustained in the fire. Filing 78-2 at 11. Amazon did not allege that any part of the damages claimed by Iowa Mutual were for its insureds' noneconomic damages. Further, the Court finds it implausible that any of the losses claimed by Iowa Mutual's insureds were of the kind identified as noneconomic damages in § 25-21,185.08(3). Accordingly, Amazon's counterclaim for allocation could not withstand a motion to dismiss for the failure to state a claim upon which relief can be granted.

Finally, Amazon argues that its counterclaim is necessary to determine the potential application of any anti-subrogation rules. Filing 85 at 4. The

Court is unsure exactly what it is that Amazon believes it cannot discover in this regard while defending against Iowa Mutual's complaint in intervention, or why its counterclaim against Legal Aid would somehow allow it to discover facts not reasonably discoverable in defending against Iowa Mutual's claim. It is true that a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that recovery is very remote and unlikely. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). But here, Amazon's argument about its need for a counterclaim against Legal Aid in order to develop a factual record doesn't pass even that low bar.

Amazon's motion for leave to amend its answer to Legal Aid's amended complaint in order to add a counterclaim is denied.

IT IS ORDERED:

1. Amazon's motion to for leave to amend its answer to Legal Aid's amended complaint (filing 78) is denied.

2. Legal Aid's motion for leave for oral argument (filing 87) is denied.

Dated this 15th day of July, 2022.

BY THE COURT:

_John M. Gerrard_
John M. Gerrard
United States District Judge